IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHAUNESI YVETTE DEBERRY,<br><br>Plaintiff,<br><br>v.<br><br>DUKE UNIVERSITY HEALTH SYSTEM, INC., operating through DUKE REGIONAL HOSPITAL and DUKE HOMECARE & HOSPICE, and HOSPICE OF WAKE COUNTY, INC., doing business as TRANSITIONS LIFECARE,<br><br>Defendants. | ) | 1:26CV724 |

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on *pro se* plaintiff Shaunesi Yvette DeBerry's application to proceed *in forma pauperis*. *See* Docket Entry 1. For the reasons set forth below, the Court will grant the application for the limited purpose of allowing the Court to consider a recommendation of dismissal.

## I. FACTS

In October and November 2020, Shaunesi Yvette DeBerry's father, Larry DeBerry, Sr. ("Mr. DeBerry"), "experienced serious medical issues, including altered mental status, episodes in which he was found confused or unresponsive, and unstable diabetes management." Compl. ¶ 19, Docket Entry 2. At the same time, he was battling metastatic cancer. *Id.* at ¶ 31P. Defendants Duke University Health System, Inc., operating through Duke Regional Hospital and Duke Homecare & Hospice (collectively "Duke") and Hospice of Wake County, Inc., doing business as Transitions LifeCare ("Transitions") were involved in Mr. DeBerry's medical care and treatment. *Id.* at ¶¶ 21-22.

At some point during this period of time, Adult Protective Services ("APS") opened an investigation into the home care that Mr. DeBerry's personal caregiver was supposed to be

providing. *Id.* ¶ 25. The Duke home care nurse who had treated Mr. DeBerry provided medical records and "a reassuring opinion" to APS despite the personal caregiver's failings. *Id.* ¶¶ 25, 31I. A Duke social worker and the home care nurse told DeBerry and her family that they would share information, but they later limited their communications to Mr. DeBerry's personal caretaker. *Id.* ¶ 31J.

DeBerry "was removed from her father's residence during his final days," and, as a result of protective orders and other proceedings, she was not permitted contact with her father and was excluded from all matters related to his death and estate. *Id.* ¶ 27. Mr. DeBerry passed away late November 17, 2020 or November 18, 2020.[1] *Id.* ¶¶ 30A, 31P.

In January 2021, DeBerry began pursuing the individuals she believed were responsible for failing to provide her information about her father's death, namely the time of and circumstances surrounding his death. *Id.* ¶¶ 31L-31P. No one has given her any of her father's medical records. *Id.* ¶¶ 31P-31R. This has "prolonged her inability to begin an informed grieving process." *Id.* ¶ 31S. Furthermore, she claims that "Duke's incomplete and restricted communications deprived her personally of the opportunity to return to North Carolina earlier, obtain or purchase needed equipment, participate more fully in care planning, document the conditions, protect her relationship with her father, and preserve her own legal rights while he was alive." *Id.* ¶ 31W. Furthermore, she alleges that the time she had to dedicate to her independent investigation of her father's care and death "materially interfered with her career, nonprofit work, professional training, reputation, earning capacity, housing stability, civic engagement, public-service activities, and parenting responsibilities." *Id.* ¶¶ 55-56. She had to withdraw her daughter from private school and "repeatedly rearrange family life while trying to obtain basic answers." *Id.* ¶ 57. All of this caused her mental and physical health to decline. *Id.* ¶ 58.

As a result, DeBerry alleges Duke and Transitions negligently failed to communicate with her and provide her complete information (counts one and two), committed fraud by providing her incomplete information (count three), and negligently, or, in the alternative, intentionally inflicted emotional distress by providing her incomplete information (counts four and five). She alleges that Duke abused process when it sought a gatekeeping order in state court (count six). She also seeks declaratory relief "defining Defendants' present obligations, if any," related to records

[1] DeBerry alleges in her complaint that "materially different entries" exist surrounding the time and date of her father's passing. Compl. ¶¶ 27-30.

material to these claims (count seven).

As relief for these alleged injuries, DeBerry seeks at least $47 million in damages and declaratory relief. *See id.* ¶¶ 1-5.

## II. STANDARD OF REVIEW

"[P]aupers filing *pro se* petitions are not subject to the financial considerations – filing fees [among them] – that deter other litigants from filing frivolous petitions." *In re McDonald*, 489 U.S. 180, 184 (1989).

Because of this, the Court shall dismiss a case filed *in forma pauperis* if it determines that the action is frivolous or malicious. *See* 28 U.S.C. § 1915(e)(2)(B)(i). Section 1915's "instruction that an action may be dismissed if the court is 'satisfied' that it is frivolous indicates that frivolousness is a decision entrusted to the discretion of the court entertaining the *in forma pauperis* petition." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

"[T]he ability to dismiss frivolous complaints under § 1915 . . . confers a 'wide latitude' and 'meaningful discretion' upon the district courts." *Nagy v. Fed. Med. Ctr. Butner*, 376 F.3d 252, 256 (4th Cir. 2004) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994); *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 954 (4th Cir. 1995)).

A complaint is considered frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see Hastings v. United States*, 165 Fed. Cl. 1, 8 (2023) (finding a complaint frivolous when it sought "extraordinary relief while alleging myriad violations of Plaintiff's rights with minimal specificity as to the allegations and relevant facts").

"But the [*Neitzke*] court did not purport to make this an exhaustive formulation of the term 'frivolous' . . . . The word 'frivolous' is inherently elastic and not susceptible to categorical definition . . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, *of all factors bearing upon the frivolity of a claim*." *Nagy*, 376 F.3d at 256-57 (emphasis added). In fact, "district courts are at liberty to consider *any factors* that experience teaches bear on the question of frivolity. *Id.* at 257 (emphasis added).

"In deciding whether to exercise their discretion to deny a request for [*in forma pauperis*] filing status, courts may consider the 'number, content, frequency, and disposition of the [litigant's] previous filings.'" *Blakely v. Wards*, 738 F.3d 607, 620 (4th Cir. 2013) (en banc) (quoting *Butler v.*

*Dep't of Justice*, 492 F.3d 440, 445 (D.C. Cir. 2007)).

"In order to prevent frivolous petitions for extraordinary relief from unsettling the fair administration of justice, the Court has a duty to deny *in forma pauperis* status to those individuals who have abused the system." *In re Sindram*, 498 U.S. 177, 180 (1991); *see also Neitzke*, 490 U.S. at 327.

The Court should find this action frivolous and dismiss it.

## III. DISCUSSION

### A. The Superior Court of Durham County entered a Gatekeeping Order against DeBerry.

This is not DeBerry's first action against parties involved in the care of her father and execution of his estate; she "has filed over eleven lawsuits in North Carolina." *See DeBerry v. Duke Homecare & Hospice, et al.*, 21CVS003970-310, Order Allowing Pre-Filing Injunctive Relief ¶ 9 (Aug. 15, 2022) ("Gatekeeping Order").

In 2021, she pursued and lost the following actions in Durham County:

- An attempt to remove her half-brother as the personal representative of their father's estate. The court dismissed her appeal as being without merit. 21E236.
- An attempt to stop the partition of jointly owned property. The court affirmed the denial and found her appeal to be without merit. 21SP604.
- A civil suit against a family member. The court dismissed the suit as being without merit. 21CVS3145.
- A civil suit against a family member. The court dismissed the suit as being without merit. 21CVS3274.
- A civil suit against family members and her father's personal caregiver. The court dismissed the suit as being without merit. 21CVS3276.
- An action against the Durham County Trial Court Administrator. The Industrial Commission dismissed the matter as being without merit.
- A civil suit against Duke Home Care & Hospice, Duke Regional Hospital, and Duke Health. The court ultimately entered a Gatekeeping Order against DeBerry. 21CVS3970.

*See id.* ¶¶ 1-7, 11.

As those actions progressed, the defendants sought gatekeeping orders

which the court initially denied "in the hope that Shaunesi DeBerry would moderate her aggressive litigation. Instead, she has persisted and, in fact, increased her court filings and email contacts. In each case, she has made the same arguments and contentions as the motivations for her actions." *Id.* at 6 ¶ 5.

In those state actions, "there was a common theme" – DeBerry's attempts "to hold [individuals and entities] accountable for what she perceives to be the wrongful death and alleged 'cover-up' of the cause of death and information about her father." *Id.* ¶ 7. But "she has never provided any facts that would support any legally recognizable claims against any of these defendants." *Id.* ¶ 12. And she pursued each of these actions as an indigent filer. *Id.* ¶ 19.

In addition to those meritless matters, DeBerry's conduct and statements to the court were also concerning. For example, she sent numerous "hostile and insulting" emails to the Durham County court staff. *Id.* ¶ 13.a.—h. The court ordered her to stop, but she continued sending emails to the presiding judge with even more "vituperative content than the emails she sent the court staff." *Id.* ¶¶ 14, 15.

When the court held a hearing on the Duke defendants' motion for the Gatekeeping Order, DeBerry said she did not intend to file any more actions in Durham County, "but clearly and convincingly implied that she intended to pursue litigation in jurisdictions other than Durham County." *Id.* ¶ 10. She told the court that "she would not stop litigating until she got answers about what time her father died." *Id.* ¶ 12. She "has clearly stated in open recorded hearings that she intends to continue this course of litigation, in both the State and Federal courts." *Id.* ¶ 21.

The court ultimately enjoined DeBerry from filing any matters related to or arising out of her father's medical care or estate without written certification by a licensed attorney. *See id.* at 7 ¶¶ 1-2. The court permitted DeBerry to file a motion to review the injunction after eighteen months. *Id.* at 8 ¶ 4.

DeBerry appealed the Gatekeeping Order, and the North Carolina Court of Appeals dismissed her appeal with prejudice. The court outlined a series of violations of appellate procedure that DeBerry committed during the pendency of the appeal, including a failure "to include a non-argumentative statement of facts," "grossly improper ad hominem attacks on trial court officials," and "the filing of [four] frivolous motions before [the court]." Order, Case No. 22-969 (N.C. Ct. App. June 27, 2023).

B. DeBerry filed suit in federal court against a Durham County Superior Court Judge and the Clerk of Court.

Frustrated with the state court's delay in addressing her June 12, 2024 motion to review and modify the Gatekeeping Order, DeBerry brought her claims to this District.

In 1:25CV1031, she sued the Senior Resident Superior Court Judge for Durham County and the Durham County Clerk of Court for denial of access to courts. *See* Compl. ¶ 7, Docket Entry 2. Although she filed and the Clerk's Office received her motion on June 12, 2024, no one referred it to a judge. *Id.* ¶ 8. According to DeBerry, this failure was a violation of the defendants' ministerial duties. *Id.* ¶ 9. She petitioned the North Carolina Supreme Court for a writ of mandamus which the Court dismissed on May 29, 2025. *Id.* ¶ 11. DeBerry claimed that, as a result, she had no state remedy and, therefore, brought the action here. *Id.* ¶ 12.

DeBerry sought *in forma pauperis* status, and, upon review of her Complaint, the court recommended dismissing the action for failure to state a claim. *See* Order & R., Docket Entry 5. Over DeBerry's objections, the district court adopted the recommendation and dismissed the action without prejudice. *See* Order, Docket Entry 14. She has since filed an Amended Complaint which is awaiting review on her motion to proceed *in forma pauperis*, as well as additional filings. *See* Docket Entries 15-20.

C. The Court should dismiss this action as frivolous.

As detailed above, the state court found DeBerry's filings related to her father's death to be so numerous and meritless and her disregard for court orders to be so troubling that it enjoined her from filing any similar actions in North Carolina state courts.

This court similarly dismissed the related action that she filed. Notably, she brought that action on November 12, 2025, *after* the North Carolina Supreme Court dismissed her petition for a writ of mandamus – which she sought for the very same conduct that formed the basis of that federal action.

While her first federal matter was pending, she filed the instant action against Duke and Transitions alleging transgressions related to and arising from the lack of communication surrounding her father's last days and death. In other words, DeBerry has repackaged her frustrations – the same or similar ones for which she sought relief in state court and lost.

In *In re Sindram*, a pro se petitioner exhibited an extensive history of filings. 498 U.S. at 177-79. In three years, and across twenty-seven different legal actions, the plaintiff

"filed 43 separate petitions and motions . . . [across] five different state and federal courts . . . [that all related] to a speeding ticket that that [the plaintiff] received[.]" *Id.* at 178-79. In every instance, the plaintiff "persisted in raising essentially the same arguments in an unending series of filings." *Id.* at 178. In denying the plaintiff's *in forma pauperis* application, the Supreme Court reasoned that the *in forma pauperis*'s "goal of fairly dispensing justice . . . is compromised when the Court is forced to devote its limited resources to the processing of repetitious and frivolous requests." *Id.* at 179-80.

Although DeBerry has thus far filed fewer lawsuits than the petitioner in *Sindram*, she has filed eleven meritless lawsuits in state court as an indigent, followed by the two actions in this court, arising under a single set of operative facts. Just like the *Sindram* petitioner, DeBerry has "persisted in raising essentially the same arguments" across all suits.

Considering the totality of circumstances – including the number, substance, frequency, and disposition of DeBerry's previous filings; the unsupported claims of negligence and fraud she asserts in the instant action arising out of the same events as her previously dismissed lawsuits; and her request for $47 million in damages for Duke's alleged provision of incomplete information – this action is frivolous.

*See Nagy*, 376 F.3d at 256-57; *Blakely*, 738 F.3d at 620.

Furthermore, the complaint "lacks an arguable basis either in law or in fact." *Neitzke*, 490 U.S. at 325. DeBerry asks for $47 million from Duke and Transgressions, not for medical malpractice, but for breaching an alleged duty to provide her with complete information – yet she was not her father's primary caregiver, and she does not allege that she has any legal rights or her father's consent to access information about his healthcare. *See, e.g.*, N.C. Gen. Stat. § 143-518 (providing the limited circumstances under which a covered entity may disclose medical records, none of which are alleged here). None of the facts plausibly allege negligence or negligent infliction of emotional distress. *See, e.g.*, *Keith v. Health-Pro Home Care Servs., Inc.*, 873 S.E.2d 567, 574 (N.C. 2022) (listing elements of a negligence claim); *Demarco v. Charlotte-Mecklenburg Hosp. Auth.*, 836 S.E.2d 322, 328 (N.C. Ct. App. 2019) (providing elements of a negligent infliction of emotional distress claim).

To bring the fraudulent concealment claim against Duke and Transitions, DeBerry must believe, among other things, that they intended to deceive her with their false statements or concealment of material facts. *See, e.g.*, *Claggett v. Wake Forest Univ.*, 486 S.E.2d 443, 447 (N.C. Ct. App. 1997). But she alleges no facts supporting this theory. The same is true for her allegation of constructive

fraud which requires, among other things, a confidential relationship between DeBerry and the defendants. *See Marger v. McCoy Hillard & Parks*, 488 S.E.2d 215, 224 (N.C. 1997) (providing elements of the claim).

By claiming intentional infliction of emotional distress, DeBerry must believe that Duke's and Transitions' conduct was extreme and outrageous (meaning that it "exceeds all bounds of decency tolerated by society") and they intended to cause her severe emotional distress, or they were recklessly indifferent to the likelihood they would cause her severe emotional distress. *See Turner v. Thomas*, 794 S.E.2d 439, 446 (N.C. 2016). But DeBerry alleges no such facts.

DeBerry has failed to allege facts that plausibly support any of the claims she has brought against Duke and Transitions in this action. This is just what she failed to do in state court where she "never provided any facts that would legally support any legally recognizable claims against any of these defendants." *See* Gatekeeping Order ¶ 12.

Moreover, this action is part of a "common theme" the state court recognized in her meritless lawsuits there – a suit against "entities she seeks to hold accountable for what she perceives to be the wrongful death and alleged 'cover-up' of the cause of death and information about her father." *See id.* ¶ 7.

The purpose of affording plaintiffs *in forma pauperis* status is to "[provide] equal access to federal courts." *Taylor v. Grubbs*, 930 F.3d 611, 614 (4th Cir. 2019). This purpose is plainly disrupted when "judicial and private resources" are wasted on "baseless lawsuits that paying litigants generally do not initiate because of the cost of bringing suit." *Neitzke*, 490 U.S. at 327.

Here, DeBerry should not be permitted to pursue this action *in forma pauperis*. The Court should dismiss this action without prejudice as frivolous. *See Nagy*, 376 F.3d at 258 (noting that a dismissal for frivolity should be without prejudice).

D. DeBerry is warned that similar conduct in the future will result in sanctions.

As noted above, the Durham County Superior Court previously entered a gatekeeping order enjoining DeBerry from filing any matters related to or arising out of her father's medical care or estate without written certification by a licensed attorney. *See supra* at 4-5. The North Carolina Court of Appeals admonished her for her filings there, as well. *See id.* at 5.

Now she has brought the same or similar grievances to federal court, having filed two actions in this district

and seeking to pursue both *in forma pauperis*.

Rule 11 of the Federal Rules of Civil Procedure clearly outlines the well-known expectations of attorneys and *pro se* parties every time they file a document with the court. The party "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that she is not filing the matter for an improper purpose, the claims "are warranted by existing law," and evidence supports the factual allegations. *See* Fed. R. Civ. P. 11(b).

When an attorney or *pro se* party acts contrary to the rule, courts have authority to order the filer to show cause as to why her conduct does not violate the rule and to sanction her for failing to do so. *See* Fed. R. Civ. P. 11(c)(1), (3). The rule further provides:

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives . . . [or] an order to pay a penalty into court.

Fed. R. Civ. P. 11(c)(4).

"Nonmonetary sanctions vary wildly depending on the facts." *Williams v. The Estates LLC*, 663 F. Supp. 3d 466, 484 (4th Cir. 2023); *see* Wright & Miller § 1336.3 (explaining that "the selection of the sanction [is] a highly contextual and fairly subjective matter that must take account of numerous factors, including a party's capacity to pay and the nature of the conduct").

"While *pro se* pleadings and filings are granted a degree of indulgence not extended to lawyers when a court considers the imposition of Rule 11 sanctions, *pro se* litigants' manifestly frivolous arguments are still subject to Rule 11." *Harr v. North Carolina*, No. 1:13CV673, 2014 WL 2212169, at *7 (M.D.N.C. May 28, 2014) (internal quotations and citation omitted), *aff'd* 588 F. App'x 285 (4th Cir. Dec. 22, 2014). Pro se plaintiffs "are subject to any and all appropriate sanctions for their misconduct.'" *Crisp v. Allied Interstate Collection Agency*, 149 F. Supp. 3d 589, 596 (M.D.N.C. 2016) (quoting *Zaczek v. Fauquier Cnty.*, 764 F. Supp. 1071, 1077 (E.D. Va. 1991)).

Although sanctions, like prefiling injunctions, that limit a *pro se* plaintiff's access to courts "should be approached with particular caution and should remain very much the exception to the general rule of free access to the courts," such a sanction may be appropriate when the plaintiff "continuous[ly] abuse[s] the judicial process by filing meritless and repetitive actions." *See Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004) (providing factors that a court must weigh, including the plaintiff's history of

litigation, the existence of a good faith basis in the lawsuit, the burden on the court and defendants from the filings, and the sufficiency of other sanctions); *see also Peggs v. GMAC Mtg, LLC*, No. 1:09CV327, 2009 WL 10680301, at *1-*3 (M.D.N.C. Nov, 13, 2009) (imposing a prefiling injunction on a *pro se* plaintiff).

**DeBerry is on notice that she is subject to sanctions up to and including a prefiling injunction if she files another lawsuit in this district against these defendants arising out of or related to her father's death and seeks to do so *in forma pauperis*.**

III. CONCLUSION

It is therefore **ORDERED** that DeBerry's application to proceed *in forma pauperis*, Docket Entry 1, is **GRANTED** for the limited purpose of allowing the Court to consider a recommendation of dismissal. It is **RECOMMENDED** that this case be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i) as a frivolous action.

JoAnna Gibson McFadden
United States Magistrate Judge

September 3, 2026